cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MARKEY, PH.D, | ) Civil No.09cv0066 L (AJB) |
| Plaintiff, | ) 09cv0603 JM (JMA) |
| v. | ) Order |
| | ) [Doc. No. 17 - [09cv66]] |
| VERIMATRIX, INC., a California Corporation, | ) [Doc. No. 11 - [09cv603]] |
| Defendants. | ) |

The parties have filed simultaneous briefing regarding a discovery dispute over the Defendant's designation of intellectual property information as "Attorney Eyes Only" in the protective order. The hearing on this matter set for July 9, 2009 at 2:00 p.m. in Courtroom A before Judge Battaglia, is hereby vacated as this motion is appropriate for submission on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, the Court finds Defendant's designation of intellectual property information as "Attorney Eyes Only" in the protective order appropriate.

### *Background*

#### 1. *Factual*

In June 2004, the Plaintiff, Dr. Markey, executed a mutual Non-Disclosure Agreement (NDA) and based thereon shared his confidential information regarding a New Access Control System (NACS) for TV Broadcasting with the Defendant. In July 2004, the Plaintiff executed a consulting agreement with the Defendant on issues concerning Defendant's existing businesses (digital video watermarking

and Internet Protocol television broadcasting in the telecommunications market), however, the agreement excluded any assignment by the Plaintiff of his intellectual property rights.

In May 2005, the Plaintiff executed an employment contract with the Defendant, and proceeded to share an Application Program Interface ("API") specification document for a set-top-box software design for the purpose of developing software for a prototype of the NACS that is set forth in one of the Plaintiff's pending patent applications. During this period, the Plaintiff was the only employee of the Defendant that was working on the NACS prototype development project.

In addition to the aforementioned employment agreement, on or about May 23, 2005, the Plaintiff, and Defendant entered an Employee Invention Assignment and Confidentiality Agreement, stating that the Plaintiff retained all rights to the pending patent applications referenced therein, derived applications, patents and reduction to practice including all work done by the Plaintiff or anyone on the implementation of the NACS system.

On September 6, 2005, the Defendant terminated Plaintiff's employment for cause alleging that the Plaintiff violated the non-disclosure agreement.

*2. Procedural*

Plaintiff first filed an action against the Defendant in the Superior Court of San Diego County in September 2007 alleging claims for (1) Wrongful Termination in Violation of Public Policy, (2) Breach of Contract, (3) Breach of the Implied Covenant of Good Faith and Fair Dealing, and (4) Promissory Estoppel. *See* San Diego Superior Court Case No. 37-2007-00074402-CU-WT-CTL. In November 2007 the Plaintiff filed an Amended Complaint adding a claim for Unfair Competition in Violation of California Business and Professions Code Section 17200.

After Demurrers and Motions to Strike, in April 2008, the Court upheld the claims of Wrongful Termination, Breach of Contract and the prayer for punitive damages. The Plaintiff filed a separate lawsuit against the Defendant on December 31, 2008 asserting claims of (1) Misappropriation of Trade Secrets in Violation of California Civil Code Sections 3426 et seq., (2) Quantum Meruit/Unjust Enrichment, and (3) Unlawful Business Practices. See San Diego Superior Court Case No. 37-2008-00099311-CU-IP-CTL (the matter was assigned to the same Superior Court judge as the initial lawsuit). Both cases were removed to this court by motion by the Defendant.

*Discussion*

The Plaintiff opposes the designation of Defendant's intellectual property information "Attorney Eyes Only" on the grounds that his attorney would be severely hampered if he is not allowed to participate in the review of the intellectual property discovery produced by the Defendant in this case. The Plaintiff argues that he must be permitted to compare, review and analyze the Defendant's intellectual property in order to determine the similarity, derivative nature and extent of unauthorized copying/misappropriation of the Plaintiff's intellectual property that has occurred. The Plaintiff contends that there is no risk, motive or incentive to compromise the Defendant's intellectual property because the Plaintiff no longer works in the same field as the Defendant, and his employer, Broadcom, has screened him off from any projects or co-workers in the Defendant's field. Furthermore, the Plaintiff contends that screening him off will expend wasteful extra time by Plaintiff's experts at tremendous expense to duplicate the input Plaintiff could have on the review of Defendant's disclosure of relevant intellectual property information.

Alternatively, the Defendant opposes allowing the Plaintiff such access on the grounds that the Plaintiff was terminated for violating the non-disclosure agreement. Defendant's are also concerned about disclosing confidential product information, such as software design specifications, source code information, technical schematics and other proprietary information because the Plaintiff allegedly attempted to start a competitor company. The Defendant also opposes Plaintiff's access on the grounds that such access would allow the Plaintiff to modify and prosecute his patents in a manner so as to have Defendant's current products infringing Plaintiff's patents.

Rule 26(c) of the Federal Rules of Civil Procedure governs protective orders. In the Ninth Circuit, issues concerning the scope of protective orders for confidential information involves a balancing test of the conflicting interests between the protection of Rule 26(c) and the broad mandate of the admissibility of information in discovery conferred by Rule 26(b)(1) of the Federal Rules of Civil Procedure. *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir.1992), *cert. denied*, 506 U.S. 869, 113 S. Ct. 198, 121 L. Ed.2d 141 (1992) (holding that courts must balance the risk of inadvertent disclosure of trade secrets to competitors against the risk that the protection of such confidential information will impair prosecution of plaintiff's claims). In this case, the Plaintiff argues

that denying him access to documents designated as "Attorney Eyes Only" under the terms of the protective order will greatly hinder his ability to litigate the claims of this case. The Plaintiff contends that granting him access to confidential information will not compromise Defendant's intellectual property.

Setting aside the issue of prejudice to the Plaintiff for the moment, the court first considers the substantive argument that the Defendant essentially has no basis for asserting the protective order against the Plaintiff. This argument fails to withstand scrutiny for a number of reasons. First, because the Plaintiff is currently involved in prosecuting patent applications, the court finds it unrealistic to expect the Plaintiff to be able to wholly compartmentalize his knowledge of Defendant's confidential information and not let it influence his current and ongoing patent prosecution . *See Brown Bag*, 960 F.2d at 1471.

Second, the fact that the Defendant and the Plaintiff are no longer directly competing hardly forecloses the inquiry.  The fact that the Plaintiff no longer works in the same field as the Defendant does not diminish the fact that the Plaintiff is still in the process of prosecuting his patent applications in the field. The fact that the Defendant is being sued by Plaintiff for misappropriation indicates that the Plaintiff believes the parties have at least some overlapping interest in the same technology. This belief, be it meritorious or not, is one that could certainly affect the competitive nature of Defendant's business. At a minimum, the Court finds that Defendant's concern that the Plaintiff could use the knowledge gained in this litigation to prosecute future related patents to Defendant's disadvantage is valid and deserving of protection.

In *U.S. Steel Corp. v. United States*, a crucial factor was whether the individual seeking access was involved in "competitive decision-making;" which the Court explained meant advising on business decisions "made in light of similar or corresponding information about a competitor." 730 F.2d 1465, 1468, n. 3 (Fed. Cir.1984). In this case, Defendant's concern that the Plaintiff's ongoing involvement in the prosecution of his patent applications leaves open the door to permitting him to tailor the claims in to cover specific, known activities that are revealed to him through the course of discovery in this litigation. Furthermore, the Court is well aware that continuation applications allow patentees and their prosecution counsel the opportunity to monitor the marketplace and respond by drafting and prosecuting

claims that cover discovered activities. In this vein, several courts have concluded that patent prosecution is, by its very nature, a form of competitive decision-making because patentees and their respective patent attorneys can control the nature and scope of a patented invention.[1] Based on the foregoing, the Court finds that the Plaintiff is involved in the sort of decision-making that disqualifies him from having access to Defendant's confidential intellectual property information.

### *Conclusion*

Based upon the foregoing and for the reasons set forth above, the Court finds Defendant's designation of intellectual property information as "Attorney Eyes Only" in the protective order appropriate.

IT IS SO ORDERED.

DATED: July 8, 2009

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

---

[1] *See, e.g., In re Papst Licensing*, 2000 WL 554219, *3 (E.D. La.2000); *Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 U.S.P.Q.2d 1783, 1784 (D. Nev.1998). Other courts have extended the conclusion to hold that patent counseling is also a form of competitive decision-making if it relates broadly to the scope of a patented invention. *See, e.g., Chan v. Intuit, Inc.*, 218 F.R.D. 659, 661-662 (N.D. Cal.2003) ("if advice related to patent prosecution is defined as competitive decision-making ... then advice on the scope of patent claims must also be defined as competitive decision-making.").